USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: **August 6, 2019**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL GALARZA,

                    Plaintiff,                    16-cv-5989 (JGK)

        – against –                               **OPINION AND ORDER**

POLICE OFFICER JASON MONTI, Badge
Number 954148, NEW YORK CITY POLICE
DEPARTMENT, CITY OF NEW YORK,

                    Defendants.

---

JOHN G. KOELTL, District Judge:

The plaintiff, Daniel Galarza, brings this action pursuant

to 42 U.S.C. § 1983 seeking redress for alleged violations of

his First, Fourth, and Fourteenth Amendment rights arising out

of his arrest by defendant Officer Jason Monti and the

subsequent destruction of his property.

The defendants, Officer Monti, the New York City Police

Department[1], and the City of New York (the "City"), move for

summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure. For the reasons that follow, the defendants'

motion for summary judgment is **granted**.

---

[1] The New York City Police Department (the "NYPD") is an improper
defendant because it is a non-suable agency of the City. The
claims against the NYPD are therefore dismissed with prejudice.
Maier v. N.Y.C. Police Dep't, No. 08-cv-5104, 2009 WL 2915211,
at *2 (E.D.N.Y. Sept. 1, 2009).

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court must resolve

2

all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## II.

The following facts are undisputed unless otherwise noted.

At the time relevant to this action, the plaintiff was working as a street photographer in Times Square selling framed photographs. Defs.' Rule 56.1 Statement ¶ 1. He worked from approximately 6:00 p.m. until 1:00 a.m. daily. Defs.' Rule 56.1 Statement ¶ 3. The plaintiff carried a monitor, a computer, an inverter, a printer, an iPad, and picture frames. Defs.' Rule 56.1 Statement ¶¶ 4, 30. The equipment was mounted onto a hand truck and weighed approximately ninety pounds. Defs.' Rule 56.1 Statement ¶¶ 5, 25.

At approximately 11:00 p.m. on the night of July 28, 2013, the plaintiff was working at the intersection of 44th Street and Broadway, directly outside a closed Toys "R" Us. Defs.' Rule 56.1 Statement ¶ 7. Around midnight, it began to rain. Defs.' Rule 56.1 Statement ¶ 8. Because it was "a really heavy rainstorm", the plaintiff packed up his equipment and moved under the awning in front of the entrance to the Toys "R" Us. Defs.' Rule 56.1 Statement ¶ 9; Bergman Decl. Ex. A 109. After he had stowed his equipment under the awning, the plaintiff went to help another vendor, Nancy Wang, who was selling calligraphic art, bring her table under the awning. Defs.' Rule 56.1 Statement ¶¶ 10, 11. Both the plaintiff and Ms. Wang were within twenty feet of the entrance to the Toys "R" Us store, which was closed at the time. Galarza Dep. at 127-28. Indeed, the plaintiff was right next to the door. Id. at 127.

The plaintiff and Ms. Wang were waiting under the awning with their equipment when Officer Monti and his partner approached them. Defs.' Rule 56.1 Statement ¶ 14. Officer Monti alleges that he and his partner approached both the plaintiff and Ms. Wang because they observed them within 20 feet of the Toys "R" Us with their vending equipment in violation of the City Administrative Code. Defs.' Rule 56.1 Statement ¶ 13; N.Y.C. Admin. Code § 20-465(d) ("No vending pushcart, stand or goods shall be located . . . within twenty feet from an

entranceway to any building, store, theatre, movie house, sports arena or other place of public assembly.").

The plaintiff alleges that Officer Monti asked the plaintiff and Ms. Wang what they were doing under the awning and the plaintiff responded: "it's obviously raining that's what we're doing under the awning." Galarza Dep. at 130-31. The plaintiff said, "[N]obody's working here, there's no customers. We're packing up because it's raining. . ." Id. at 131. The plaintiff alleges that Officer Monti then proceeded to "wake up" the plaintiff's computer. Id.

Both parties agree that Officer Monti then asked the plaintiff for his ID, which the plaintiff gave to Officer Monti. Defs.' Rule 56.1 Statement ¶ 19. Officer Monti then made a call to "Central" to determine if the plaintiff had any outstanding warrants. Defs.' Rule 56.1 Statement ¶ 20. Officer Monti was told that there was an outstanding warrant for the plaintiff's arrest. Id. Officer Monti informed the plaintiff that there was a warrant for his arrest. Officer Monti then arrested the plaintiff, placed him in handcuffs, and placed him in a police van. Defs.' Rule 56.1 Statement ¶ 23. The parties agree that the plaintiff was not arrested until after Officer Monti had determined that there was an outstanding warrant for the plaintiff's arrest. Defs. Rule 56.1 Statement ¶ 21. Ms. Wang was issued a summons, but neither party is aware of the exact

charge. Defs.' Rule 56.1 Statement ¶ 18. Ms. Wang was not taken to the precinct. Id.

The plaintiff then observed Officer Monti and his partner lift his property up and place it into a van sidewise, and lay it down. Galarza Dep. at 138. The plaintiff alleges that the equipment was "heavy" and "so they dropped it." Id. at 139. The plaintiff does not know whether the officers dropped the equipment on purpose. Id. The plaintiff was not present when the equipment was removed from the van. Defs. Rule 56.1 Statement ¶ 25. The plaintiff was then transported to the Midtown South precinct. Defs.' Rule 56.1 Statement ¶ 23. The plaintiff was issued a ticket for "vending within 20 feet of building entrance . . . . Arresting officer observed defendant displaying merchandise for sale within approximately 5 feet from entrance of Toys R Us." Kinigstein Decl. Ex. I. The ticket cited a violation of Administrative Code § 20-465(d). Id. The ticket was ultimately dismissed. Galarza Dep. 143-44.[2]

At the police precinct, the plaintiff was searched. Defs.' Rule 56.1 Statement ¶ 27. The plaintiff then appeared before a judge and was released on his own recognizance. Defs.' Rule 56.1 Statement ¶ 28.

---

[2] The plaintiff does not dispute that the ticket was issued by Officer Monti, but the plaintiff disputes whether he was ever given notice of the ticket.

On July 30th, 2013, the plaintiff returned to the precinct to get his property. Defs.' Rule 56.1 Statement ¶ 29. The property was returned to him in trash bags, in which he found the camera, computer, monitor, and picture frames all damaged. Defs.' Rule 56.1 Statement ¶ 30.

The plaintiff alleges that the damage was irreparable and he could not afford to repair it or to purchase new equipment. Galarza Dep. at 147. Thus, the plaintiff alleges that the destruction of his property resulted in his no longer being able to work as a photographer. Pl.'s Mem. Opp. Defs.' Mot. Summ. J. 3.

The plaintiff filed the current complaint against Officer Monti, the NYPD, the City of New York, William de Blasio, Mayor of the City of New York, and William Bratton, Chief of the NYPD. On October 3rd, 2017, Monell Discovery was stayed. Defs.' Rule 56.1 Statement ¶ 33. On November 15, 2017, all individual defendants were dismissed from the action except Officer Monti. Defs.' Rule 56.1 Statement ¶ 34.

### III.

The plaintiff brings several claims against Officer Monti under 42 U.S.C. § 1983. The plaintiff alleges a Fourteenth Amendment procedural due process violation, a Fourteenth Amendment equal protection violation, a Fourth and Fourteenth Amendment false arrest claim, and a First and Fourteenth

Amendment retaliatory arrest claim. The defendants move for summary judgment with respect to all claims alleged against Officer Monti.

**A.**

The plaintiff brings a Fourteenth Amendment procedural due process claim alleging deprivation of property because of the destruction of his equipment by Officer Monti. The defendants move for summary judgment on this claim on the basis that the plaintiff had an adequate state law post-deprivation remedy which he did not pursue.

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984); Parratt, 451 U.S. at 541)). Where a claim is based on random, unauthorized acts by state employees, the Due Process Clause of the Fourteenth Amendment is not violated "so long as the state provides a meaningful post-deprivation remedy." Hellenic, 101 F.3d at 880 (citing Hudson, 468, U.S. at 531, 533); see also Ochoa v. Bratton, No. 16-cv-2852, 2017 WL 5900552, at *4 (S.D.N.Y. Nov. 28, 2017).

The plaintiff does not allege that his property was destroyed because of an established procedure. The plaintiff only alleges that Officer Monti and his partner dropped his equipment as they were placing it into the police van, but that he did not know if they dropped it on purpose. Galarza Dep. at 138. Consequently, the plaintiff can only sustain a due process claim if he was not provided with a meaningful post-deprivation remedy. However, New York law provides adequate post-deprivation remedies in the form of common law actions for negligence, conversion, and replevin. Johnson v. City of New York, No. 09-cv-4685, 2011 WL 1044852, at *12 (S.D.N.Y. Mar. 18, 2011); Mejia v. New York City Dep't of Corr., No. 96-cv-2306, 1999 WL 138306, at *4 (E.D.N.Y. Mar. 5, 1999). The plaintiff's failure to initiate any of these causes of action "does not convert his cause of action into a constitutional due process claim." Smith v. O'Conner, 901 F. Supp. 644, 647 (S.D.N.Y. 1995) (Sotomayor, J.) ("[S]ection 1983 [can]not be made a vehicle for transforming mere civil tort injuries into constitutional injuries.").

The plaintiff was provided with an adequate post-deprivation remedy, which he did not pursue. Thus, Officer Monti is entitled to summary judgment with respect to the plaintiff's claim of deprivation of property without due process.

Officer Monti also moves for summary judgment on the equal protection claim on the grounds that the plaintiff has not alleged that he was a member of any vulnerable class and Officer Monti had a rational basis for his actions in arresting the plaintiff.

"The Equal Protection Clause requires that the Government treat all similarly situated people alike." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). "[T]he prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class . . ." Id. Courts also recognize equal protection claims by individuals "who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." Id. The Supreme Court has noted that "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); see also Mallet v. Johnson, No. 09-cv-8430, 2011 WL 2652570, at *5 (S.D.N.Y. July 7, 2011).

Here, the plaintiff has not set forth an equal protection claim on either ground. First, the plaintiff has not claimed

class membership in any suspect class and therefore cannot establish a "prototypical" equal protection claim. Harlen Assocs., 273 F.3d at 499. Second, the plaintiff has failed to allege that he was in a "class of one" because he has not shown that Officer Monti acted without a rational basis with respect to his arrest. The plaintiff argues that his arrest was a violation of the Equal Protection Clause because he was arrested and brought to the precinct when other vendors -- specifically Ms. Wang -- were not. However, Officer Monti has proffered a rational basis for the plaintiff's purportedly different treatment from Ms. Wang and other Times Square vendors -- the existence of the warrant for the plaintiff's arrest. Ms. Wang was also issued a summons, and the plaintiff has not shown that there was an outstanding warrant for Ms. Wang's arrest and that she was not arrested. Officer Monti has therefore demonstrated that he had a rational basis for treating the plaintiff differently from Ms. Wang.

Thus, the plaintiff's Fourteenth Amendment equal protection claim fails and defendant Officer Monti is entitled to summary judgment with respect to that claim.

### C.

The defendants also moves for summary judgment on the false arrest claim on the basis that Officer Monti had probable cause to arrest the plaintiff.

"[A]n arrest must be supported by probable cause or else it violates the Fourth Amendment." United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Section 1983, to the extent that it provides a remedy for violations of the Fourth Amendment, protects an individual's right to be free from arrest without probable cause. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). When analyzing § 1983 claims for false arrest, courts generally look "to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) (collecting cases). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined [the plaintiff] without [the plaintiff's] consent and without justification." Amore v. Novarro, 624 F.3d 522, 532 n.13 (2d Cir. 2010) (internal quotation marks and citation omitted). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Amore, 624 F.3d at 536 (quoting Weyant, 101 F.3d at 852).

Under New York Law, "[a]n arrest warrant validly issued by a court having jurisdiction precludes an action for false arrest against the municipality and the police officer involved with its execution." St. John v. Town of Marlborough, 558 N.Y.S.2d 332, 334 (App. Div. 1990) (citations omitted). Thus, "[w]here an

arrest is made pursuant to a warrant, there can be no claim for false arrest . . ." Jones v. Trump, 971 F. Supp. 783, 788 (S.D.N.Y. 1997).

Furthermore, "[p]robable cause exists if at the time of the arrest 'the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gutierrez v. City of New York, No. 13-cv-3502, 2015 WL 5559498, at *4 (S.D.N.Y. Sept. 21, 2015) (quoting Beck, 379 U.S. at 91) (alterations in original). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment arrest the offender." Atwater v. Lago Vista, 532 U.S. 318, 354 (2001). This holds true for violations of the City Administrative Code. See United States v. Rodriquez, 368 Fed. Appx. 178, 180 (2d Cir. 2010).

Officer Monti had probable cause to arrest the plaintiff because there was a valid warrant for the plaintiff's arrest and because Monti observed the plaintiff violating the City Administrative Code.

The existence of the valid warrant for the plaintiff's arrest precludes his action for false arrest. Jones, 971 F. Supp. at 788. The plaintiff argues that the initial stop made by

Officer Monti was unlawful, and because Officer Monti only discovered the arrest warrant after he made the allegedly illegal stop and asked for the plaintiff's identification, the resulting arrest pursuant to the warrant was allegedly illegal.[3] This argument is without merit. Officer Monti needed only reasonable suspicion to stop the plaintiff and question him about a possible violation of the Administrative Code. See Terry v. Ohio, 392 U.S. 1, 22 (1968). Officer Monti had reasonable suspicion to stop the plaintiff because Officer Monti observed the plaintiff standing with his vending equipment within 20 feet of the Toys "R" Us entrance in violation of Administrative Code § 20-465. The City Administrative Code makes it illegal for a "vending pushcart, stand or goods [to] be located . . . within twenty feet from any entranceway to any building [or] store . . ." N.Y.C. Admin. Code § 20-465. The plaintiff does

---

[3] The plaintiff's reliance on the "fruit of the poisonous tree" doctrine is misplaced. "The fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions." Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999). Moreover, the plaintiff makes much of an argument in his opposition papers that a malicious prosecution claim can move forward despite a finding of probable cause for the arrest, but the plaintiff did not previously raise a claim for malicious prosecution in his pleadings. It is improper to raise a new claim for the first time in an opposition to a motion for summary judgment and the Court therefore will not consider it. See, e.g., Kearney v. Cty. of Rockland, 373 F. Supp. 2d 434, 440 (S.D.N.Y. 2005) (collecting cases).

not contest that when he was standing under the awning with his equipment he was within twenty feet of the Toys "R" Us entrance. Galarza Dep. at 127-28. Therefore, Officer Monti had reasonable suspicion to believe that the plaintiff was violating the Administrative Code, and certainly reasonable suspicion to stop and question the plaintiff about the plaintiff's activities.

The plaintiff asserts that "there are genuine issue of fact regarding whether Galarza was vending" when he was under the Toys "R" Us awning. Pl.'s Mem. Opp. Defs.' Mot. Summ. J. 5. However, the City Administrative Code does not state the person must be "vending" within twenty feet of the entrance of a store, only that the person be within twenty feet of the entrance with vending equipment or goods, which the plaintiff does not contest that he was. N.Y.C. Administrative Code § 20-465(d) prohibits having a "pushcart, stand or goods" within 20 feet of certain locations. Other provisions of the Administrative Code place restrictions on where actual vending can occur. See, e.g., id. at § 20-465 (a), (e), and (f).

Indeed, based on the terms of the Administrative Code, Officer Monti had probable cause to arrest the plaintiff for a violation of N.Y.C. Administrative Code § 20-465(d), or at least arguable probable cause so that he would be entitled to qualified immunity for the arrest. See, e.g., Figueroa v. Mazza, 825 F.3d 89, 100-01 (2d Cir. 2016).

In any event, the plaintiff's argument fails because whatever the legality of the initial stop, Officer Monti had the right to arrest the plaintiff based on the outstanding arrest warrant and the existence of that valid warrant attenuates the connection between an allegedly unlawful stop and a subsequent arrest. See Utah v. Strieff, 136 S. Ct. 2056, 2062-64 (2016)(holding that the discovery of a valid, pre-existing warrant creates an obligation on the officer to arrest the plaintiff and attenuates the connection between an unlawful stop and any search incident to the arrest).

Because Officer Monti had probable cause to arrest the plaintiff based on the outstanding warrant, he is entitled to summary judgment dismissing the Fourth and Fourteenth Amendment false arrest claim.

### D.

### 1.

The plaintiff also alleges that his arrest and the destruction of his property violates his First and Fourteenth Amendment rights. Specifically, he alleges that the destruction of his photography equipment and his inability to replace it kept him from pursuing his work as a photographer in Times Square. He claims that this constituted retaliation against him for exercising his First Amendment rights.

In order to succeed on a First Amendment retaliation claim, the plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions effectively chilled the exercise of the plaintiff's First Amendment rights." Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998) (citation omitted); Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

The defendants argue that a finding of probable cause for the plaintiff's arrest precludes an inquiry into Officer Monti's motivations in arresting the plaintiff and bars any First Amendment retaliatory arrest claim.

"The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive." Caravalho v. City of New York, No. 17-cv-1944, 2018 WL 1940938, at *3 (2d Cir. Apr. 25, 2018) (citing Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012)).[4] Where probable cause for the arrest exists, "an

---

[4] The Supreme Court recently held that a plaintiff may prevail on a civil claim for damages for First Amendment retaliation against a municipality for an arrest made pursuant to an official municipal policy, even if there was probable cause for the arrest, if "the alleged constitutional violation was a but-for cause" of the arrest. Lozman v. City of Riviera Beach, Florida, 138 S. Ct. 1945, 1952 (2018). However, the Supreme Court left open the question of whether probable cause for the arrest remains a defense to First Amendment retaliatory arrest claims asserted against individual officers. Id. at 1954.

inquiry into the underlying motive of the arrest need not be undertaken." Curley, 268 F.3d at 73. As discussed above, Officer Monti had probable cause to arrest the plaintiff, and the Court therefore need not inquire into the underlying motive for the arrest.

Moreover, there is no evidence to suggest any retaliatory motive or effort to silence the plaintiff. The plaintiff suggests that an impermissible motive can be inferred from Officer Monti's actions in "waking up" the plaintiff's computer after the plaintiff called Officer Monti "ridiculous". Pl.'s Mem. Opp. Defs.' Mot. Summ. J. 16. However, the plaintiff's speech in calling Officer Monti "ridiculous" is not the speech of vending in Times Square that the plaintiff alleges was silenced by the arrest or that the plaintiff alleges was the reason for the arrest. There is no evidence that the plaintiff's First Amendment activity -- vending in Times Square -- was a motivating factor in Officer Monti's decision to arrest him. The arrest occurred only after Officer Monti discovered that there was an outstanding warrant for the plaintiff's arrest.

---

Because the Second Circuit Court of Appeals has not decided the effect of Lozman, if any, on such claims, the current binding precedent in this Circuit is that probable cause for an arrest defeats a First Amendment retaliatory arrest claim. See Higginbotham v. Sylvester, No. 16-3994, 2018 WL 3559116, at *2 (2d Cir. July 25, 2018).

Thus, Officer Monti is entitled to summary judgment dismissing the First and Fourteenth Amendment claim.

## 2.

Officer Monti is also entitled to qualified immunity with respect to the First and Fourteenth Amendment claim.

Qualified immunity shields government officials from liability for civil damages when they are sued in their personal capacity as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, insubstantial lawsuits. Lennon v. Chief William P. Miller of the City of Troy, 66 F.3d 416, 420 (2d Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; see also Zavaro v. Coughlin, 970 F.2d 1148, 1153 (2d Cir. 1992).

For the plaintiff to overcome the qualified immunity defense, he must demonstrate that he possessed a clearly established constitutional right. Three factors should be considered when determining whether there is a clearly established right: (1) whether the right in question was defined with "reasonable specificity;" (2) whether relevant decisional

law supports the existence of the right in question; and (3) whether under preexisting law, a reasonable defendant official would have understood that his actions were unlawful. Benitez v. Wolff, 985 F.2d 662 (2d Cir. 1993) (citing Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991)); see also Malsh v. Austin, 901 F. Supp. 757, 764 (S.D.N.Y. 1995).

The plaintiff argues that Officer Monti violated his First Amendment rights when Officer Monti arrested the plaintiff in retaliation for his expression of vending in Times Square. However, as discussed above, it is plain that Officer Monti had probable cause to arrest the plaintiff because there was an outstanding warrant for the plaintiff's arrest. Therefore, the plaintiff can only overcome a claim of qualified immunity if it was clearly established at the time of the arrest that the plaintiff had a right to be free from a First Amendment retaliatory arrest even where there was probable cause for the arrest. The Supreme Court made clear in Reichle v. Howards, 566 U.S. 658 (2012), and again in Lozman, that such a right is not clearly established. Reichle, 566 U.S. at 664-69 ("This Court has never recognized a First Amendment right to be free from retaliatory arrest that is supported by probable cause. . . [arresting officers] are thus entitled to qualified immunity."); Lozman, 138 S. Ct. at 1954 ("[W]hether in a retaliatory arrest case [suit should be barred] where probable cause exists . . .

must await a different case."). Therefore, an arresting officer is protected by qualified immunity from a lawsuit challenging an arrest as retaliatory where the arrest was supported by probable cause, as this arrest plainly was. Accordingly, because Officer Monti did not violate a clearly established right of the plaintiff when he arrested the plaintiff, Officer Monti is entitled to qualified immunity with respect to the claim for retaliatory arrest in alleged violation of the First and Fourteenth Amendments.

## IV.

The plaintiff also brings claims against the City of New York. Under Monell v. Department of Social Services., 436 U.S. 658 (1978), municipalities like the City may be liable for damages under § 1983 for injuries inflicted pursuant to a government policy or custom. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).

Because "neither Monell . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm," the threshold issue for this claim is whether the plaintiff suffered the deprivation of constitutional rights that he alleges. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam);

see also Vaughns v. City of New York, No. 17-cv-3448, 2018 WL 1325758, at *2 (S.D.N.Y. Mar. 13, 2018). Additionally, the plaintiff must demonstrate that the municipality was the "moving force" behind the injuries alleged. Monell, 436 U.S. at 694; See also McKay v. City of New York, 32 F. Supp. 3d 499, 513 (S.D.N.Y. 2014).

The Monell discovery was bifurcated and stayed by the Court. However, having found the Fourth and Fourteenth Amendment claims against Officer Monti fail as a matter of law, there can be no Monell liability with respect to those claims because there is no underlying constitutional violation. Thus, the City is entitled to summary judgment with respect to the Monell claims brought pursuant to the alleged Fourth and Fourteenth Amendment violations.

With respect to the First Amendment claim, the plaintiff has failed to produce any evidence that his arrest was the result of a City policy, and any additional discovery into the claim would be futile. While Monell discovery was stayed, the plaintiff was free to pursue all discovery relating to the circumstances of his arrest by Officer Monti. He deposed Officer Monti and the plaintiff's deposition was taken. The plaintiff was free to depose anyone at the precinct or otherwise who spoke with Officer Monti in connection with the arrest. Discovery with respect to all claims against Officer Monti was completed and

nowhere in such discovery is there any evidence to support the claim that Officer Monti's arrest of the plaintiff was made pursuant to a city policy to chill the First Amendment rights of the plaintiff or vendors. Officer Monti did not testify that he was directed by any City official to arrest the plaintiff for retaliatory reasons or that he was trained on any policy that targeted street vendors. Thus, there is no evidence that this particular arrest was made pursuant to any city policy. The plaintiff has therefore failed to demonstrate that any city policy was the "moving force" behind the arrest. McKay, 32 F. Supp. 3d at 513.

The plaintiff argues that Lozman counsels a different result. But in Lozman, the city policy was undeniably the moving force behind the arrest. In that case, the city councilmembers "formed an official plan to intimidate" the plaintiff and the councilmembers, at a town hall meeting in which the plaintiff was speaking to the council, directed the arresting officer to make the arrest of the plaintiff. Lozman, 138 S. Ct. at 1949. The plaintiff has pointed to no evidence that Officer Monti was directed to arrest the plaintiff pursuant to any city policy of retaliation. Lozman is therefore plainly distinguishable.

Accordingly, the plaintiff has failed to present any evidence that Officer Monti's actions were the result of any city policy of retaliation against vendors or the plaintiff and

thus the <u>Monell</u> claim fails. Therefore, the City of New York is entitled to summary judgment dismissing the <u>Monell</u> claim based on alleged First and Fourteenth Amendment violations.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendants' motion for summary judgment is **granted**. The Clerk of Court is directed to enter judgment dismissing the plaintiff's claims **with prejudice**. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**    **New York, New York**
             **August 6, 2018**
                                                **John G. Koeltl**
                            **United States District Judge**